## INDEPENDENT AGENTS AGREEMENT

**THIS AGREEMENT** (the "Agreement") is made and entered effective as of the 15th day of April of 2020 (the "Effective Date") by and between Tygris Medical LLC (the "Company") a Colorado Limited Liability Company and, MPG Endeavors LLC a New York Limited Liability Company (the "Agent").

### Recitals

A. The Company is in the business of distributing, and selling medical products and supplies ("Business") and desires to engage the services of the Agent as an independent distributor to assist in the sales of the Company.

B. The Agent represents that he/she specializes in marketing and selling the medical appliances of the Company.

**NOW, THEREFORE,** for and in consideration of the mutual promises contained herein, and other good and valuable consideration, the parties agree as follows:

1. **Recitals:** The Recitals stated above are true and correct and are incorporated herein by reference.

2. **Engagement:** The Company agrees to pay commissions in accordance with Schedule A and the Agent accepts such engagement and agrees to solicit business for the Company in accordance with Company policy.

3. **Term:** The term of this Agreement shall commence on the day of 15th day of April, 2020. The Agreement shall continue until terminated by either party upon thirty (30) days prior written notice being given to the other party unless a breach of this Agreement occurs, in which case termination will be immediate and commission will be paid for duration that accounts are purchasing. Upon termination the Agent will be provided 1 month (the "Period") to close all business being solicited and prospected that has been introduced to the Company by the Agent. The Company will accept contracted business provided by the Agent that occurs in the Period and the Agent will be paid full commission. as dictated by paragraph 4(C) on both current business and closed sales and contracts which occur in the Period of a year. Commissions will continue to be paid for a period of after the date of termination of the contracts.

4. **Services and Compensation:** During the term of this Agreement the Agent and the Company agree as follows:

    A. The Agent agrees to actively solicit business for the Company pursuant to the territory listed on Schedule B as changed by the company with 30 days advance notice to agent. Commissions will continued to be paid to agent for sales acquired by Agent in said territory, for as long as Agent is managing the customer account.

    B. The Agent will be paid according to schedule A. Commissions will be paid on a monthly basis, on the 15th of each month, by Company via electronic bank to bank transfer or check, as agreed upon by

                Company and Agent, and will be paid within thirty (30) days following receipt of payment by the Company.

       C. The Company will provide all necessary training and immediately following completed training the Agent will begin to schedule appointments.

5. **Independent Contractor Relationship:** It is understood, agreed to, and expressly acknowledged by the parties that the Agent is an "independent contractor," and nothing contained in this Agreement is intended or will be construed: (a) to create a partnership or joint venture between the parties, or any affiliate, employee, officer, agent, or associate of any of the parties, (b) to cause either party or any affiliate, employee, agent, or associate of either party to be responsible in any way for the liabilities of the other party, or (c) to constitute an employer-employee relationship between the parties. Agent shall be independently responsible for payment of all federal, state and local taxes, including withholding, social security, Medicare, unemployment compensation, and all other taxes imposed on employers and Agent shall indemnify, defend, and hold the Company harmless with respect to same, including but not limited to governmental penalties and interest, if any.

6. **Indemnification:** The Company and the Agent agrees and shall fully exonerate, indemnify, defend, and hold each party harmless from and against all claims or actions and all expenses incidental to the defense of such claims or actions, based upon or arising out of damage or injury to persons or property caused by or sustained in connection with the performance of this Agreement

7. **Non-Disclosure of Confidential Information:** Agent acknowledges and agrees that, as a direct result of services to be rendered in accordance with this Agreement, he/she will have access to, learn about, and become familiar with, trade secrets of the Company and other confidential and proprietary information belonging to the Company or relating to its Business (the trade secrets and other confidential and proprietary information will be referred to collectively as "Confidential Information"). Confidential Information includes, without limitation, all pricing, costs, expenses, revenue, income, and other financial information relating to the Company, its customers and vendors, any lists, files, or other non-public business information relating to current or potential customers, vendors, contact persons, or personnel, as well as any research, charts, invoices, order forms, sales and promotional materials, computer discs and equipment, video equipment and tapes, sales reports, data, analysis, concepts, strategies, plans, methods, policies, and procedures developed, acquired, refined or otherwise utilized by the Company in carrying out its Business and which is not readily ascertainable by proper means. Agent agrees that he/she will not, at any time, Directly or Indirectly ("Directly or Indirectly" shall be defined as including but limited to acting as a general or limited partner, joint venturer, sole proprietor, shareholder, officer, director, agent, employee, consultant, independent contractor, trustee, or otherwise for any person, firm, partnership, corporation or other entity, whether for compensation or otherwise), disclose, attempt or threat to disclose, allow to be disclosed, or assist any person in obtaining, utilizing, or disclosing any Confidential Information.

8. **Non- Compete-** Intentionally Omitted

9. **Compliance:** Company will take any other action necessary, and add to or modify the terms of this agreement as necessary, at such times, and from time to time, to comply

        with and remain in compliance with, all state and federal legal and regulatory requirements that govern the relationship between Company and Agent.

10. **Waivers:** Either party's waiving any default or violation or breach of any term of this Agreement does not waive any other violation or breach of any term or covenant of the Agreement Nor does either party's forbearing to enforce one or more of the remedies provided in this Agreement or by law upon a default waive the default. Neither the failure of either party to exercise any power given such party or to insist upon strict compliance by the other party with its obligations, nor any custom or practice of the parties at variance with the terms of this Agreement shall constitute a waiver of either party's right to demand exact compliance with the terms of this Agreement.

11. **Assignment:** Neither this Agreement nor any part hereof shall be assignable by the Agent or Company without the prior written consent of the other party. All persons who will be selling Company's products must sign this contract in order to obtain payment. No agents are allowed to subcontract or sublicense any duties, commissions, or any parts of this Agreement without the prior written consent of the Company.

12. **Notice:** Whenever under the provisions of this Agreement notice or other communication is required or permitted to be given, such notice shall be in writing and shall be deemed to have been given when either hand delivered, delivered by a nationally recognized overnight courier, or sent by certified or registered mail, return receipt requested, to the parties at the address reflected on the books of the Company, or at such other address as shall be furnished in writing to the other party.

13. **Amendment:** This Agreement may be amended or modified in writing executed by the parties.

14. **Dispute Resolution:** Should any dispute arise between the parties with respect to the interpretation of this Agreement or a party's performance or default hereunder, and the matter is not resolved within thirty (30) days or such other time as is specifically stated in this Agreement, the matter shall be resolved by binding arbitration with AAA Dispute Resolutions, in Douglas County, Colorado, in accordance with Colorado Law. If a dispute arises between the parties with respect to commission owed, the Company agrees to provide all accounting documentation related to business the Agent introduced for the Company.

15. **Best Efforts:** The obligations of the parties under this agreement are undertaken on a good faith, best efforts basis. Neither party will be held responsible to the other, or the any third party, for inability to perform as a result of illness or physical incapacity, severe weather conditions, acts of God, acts of terrorism, the failure of technology, acts of third parties, or other conditions, events or circumstances that are reasonably beyond the control of such party.

16. **Miscellaneous:**

    A. **Section and Other Headings.** Section, paragraph and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

    B. **Severability.** In case any one or more provisions contained in this Agreement shall, for any reason, be held invalid, illegal or

unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision herein and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.

C. **Choice of Law.** It is the intention of the parties that the law of the State of Colorado shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties.

D. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto and there are no agreements, understandings, restrictions, warranties, or representations, expressed or implied, oral or written between the parties other than those herein contained.

E. **Parties and Interest.** All terms and provisions of this Agreement shall be binding upon and inure to the benefit of, and be enforceable by the Company and the Agent, and their successors, heirs, administrators, and approved assigns.

F. **Construction.** This Agreement shall not be construed against either party regardless of who is responsible for its drafting.

G. **Third Party Beneficiary.** None of the terms or provisions of this Agreement shall be deemed or construed to create any third party beneficiary rights to any person who is not a party hereto unless expressly otherwise provided herein.

H. **Gender.** All personal pronouns used in this Agreement shall include the other genders whether used in the masculine or feminine or neuter gender and the singular shall include the plural wherever and as often as may be appropriate.

J. **Counterpart Signatures.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Facsimile signatures shall be considered for all purposes as originals. Electronic signatures in accordance with Colorado Statutes shall be binding upon the party electronically acknowledging the document.

K. **Authorized Signatures.** Each party represents and warrants that the person signing this Agreement on its behalf has been and is on the date of this Agreement duly authorized by all necessary corporate or other appropriate action to execute this Agreement.

  L. **Rules, Regulations, Policies, Recommendations and Procedures.** All Agents must comply with all Federal and State Governmental and quasi-governmental (agencies, municipalities, etc.) rules, regulations, policies, recommendations, and procedures. Without limiting the foregoing, and in particular, Agent acknowledges he/she is familiar in particular with the U.S. Food and Drug Administration's rules, regulations, policies, and recommendations, and will ensure compliance with same and will indemnify and hold harmless Company for any such violations.

  M. **Company Policy.** Agent agrees to adhere to all Company policies in existence from time to time.

**EXECUTED BY** the parties on the date and year indicated immediately below their signatures.

| "Company" | "Agent" |
|---|---|
| Tygris Medical LLC | MPG Endeavors LLC |
| 1050 Highland Ridge Way, #201 | 3547 Bullis Road |
| Castle Rock, CO 80109 | Elma NY 14059 |
| Julianne Kennedy | Mary Pat Gallivan |
| **Title:** Managing Partner | |
| By: *Julianne Kennedy* | By: *Mary Pat Gallivan* |
| Date: 04-16-2020 | Date: 04-04-2020 |

## SCHEDULE A

### COMMISSION STRUCTURE

50% of all net sales from Account Agent has secured, based on a the net profit from Supplier ( Net Sales equals Gross Sales less cost of product less incidentals such as shipping, handling, tax, administrative fee, legal fee, escrow fee, financing fees if necessary on government transactions and or any third party vendor payment system)

Management of Additional Agents will be paid as such: Agent will receive a 25% commission of all net sales secured by Additional Sales agents brought on by or placed by Tygris Medical LLC based on 40% Supplier commission rate.

## SCHEDULE B

### NON EXCLUSIVE TERRITORY